502 P.2d 978 (1972)
BANK OF NEW EFFINGTON and Richard Vander Vorste, Plaintiffs-Appellees,
v.
Anita THOMPSON, aka Anita Umsted, aka Anita Reynolds, Defendant-Appellant.
No. 72-124.
Colorado Court of Appeals, Div. I.
October 31, 1972.
*979 A. Daniel Rooney, Aurora, for defendant-appellant.
No appearance for plaintiffs-appellees.
Not Selected for Official Publication.
ENOCH, Judge.
This suit involves a transaction which occurred in South Dakota. In June 1969, Anita Thompson, defendant-appellant, responded to a newspaper advertisement which offered for sale a freak animal show. After a discussion with the owner, Richard Vander Vorste, she decided to purchase the show for $5,000.
In an attempt to finance the transaction, defendant contacted the Bank of New Effington, South Dakota, plaintiff-appellee (Bank). The Bank president, John McGregor, responded to her inquiry by letter, stating that though the Bank could not directly finance the sale, a sales contract could be drawn between Thompson and Vander Vorste, which the Bank would purchase.
On June 28, a written contract for sale was signed by defendant and Vander Vorste providing for a total purchase price of $5,000, with a $1,665 cash down payment. Additional terms called for defendant to sign a promissory note in blank and for McGregor, at a "later date," to fill in the balance due of $3,335, payable "at not more than 8% interest for a period of (two) years."
That same day, McGregor provided defendant with a blank financing statement and security interest forms, and a blank promissory note designating the Bank as payee, all of which she signed. She then paid Vander Vorste $1,000 of the down payment in cash and $665 by post-dated check. Some time later, McGregor filled in the promissory note. He also completed the financing statement and the security agreement, naming the Bank as the secured party.
Subsequently, the animal show was shipped to Swift Current, Canada, and set up by defendant for the first time. There, according to defendant's testimony, she discovered that much of the equipment was defective or sub-standard, and that the animals were different from those she had been promised. Defendant testified that she attempted both to call and write Vander Vorste from Swift Current to ask for the return of the $1,000 and to offer to return the merchandise. When she received no reply, she tried unsuccessfully to show the animals before sending them to be stored in California.
On August 31, 1970, the Bank filed an action in Denver Superior Court, seeking to recover $3,335 plus attorney's fees and interest, on the promissory note. In a second cause of action it sought possession of *980 the components of the freak animal show which were listed on the security agreement. A third claim for relief, by plaintiff Vander Vorste, sought recovery of $665 the amount of the down payment check drawn by defendant which had been dishonored when presented for payment.
After hearing the evidence, the trial judge dismissed the Bank's second claim and entered judgment for the Bank on the promissory note in the amount of $3,335. Vander Vorste's claim was dismissed and he did not appeal. Defendant appeals from the judgment on the note; however, the Bank has not entered an appearance before this court. Pursuant to C.R.S.1963, XXX-X-XXX(1) and S.D.Comp.Laws 1967, 57-1-27, the applicable substantive law in this case is the Uniform Commercial Code as enacted in South Dakota.
Appellant's first contention is that the Bank's suit on the promissory note was premature. We agree and therefore reverse the judgment.
The note which the appellant signed in blank was completed at a later point in time by the Bank's president. After inserting the proper amount of $3,335, he added provisions for six payments of $500 each and a final payment of $335. Final payment of both principal and interest was to be made on November 1, 1970, or approximately sixteen months after the June 28, 1969 date which appeared on the note.
S.D.Comp.Laws 1967, 57-10-23, provides that, when a paper which is intended to become a negotiable instrument is signed while incomplete, it becomes enforceable "when it is completed in accordance with authority given." In this case, the written contract for sale which provided authority for completion set the term of the note at two years and made no mention of periodic installment payments.
McGregor's completion of the note in terms varying the authorized time and manner of payment was unauthorized (S. D.Comp.Laws 1967, 57-10-24) and constituted a material alteration under S.D. Comp.Laws 1967, 57-13-14(2). Since the sales agreement stated that the unpaid balance was to have been financed for a period of two years, the note would not have become due until June 28, 1971.
S.D.Comp.Laws 1967, 57-13-15(2) provides that where, as here, the alteration is not fraudulent, the instrument may be enforced according to the authority given. Since a cause of action on a time instrument accrues against the maker "on the day after maturity" (S.D.Comp.Laws 1967, 57-10-38(1)) and since the complaint was filed ten months prior to the maturity date "as authorized," the suit was premature.
The other alleged errors need not be considered since the judgment must be reversed for the reasons stated.
The judgment is reversed with directions to dismiss, without prejudice, the Bank's claim on the promissory note.
COYTE and DWYER, JJ., concur.